IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

PAMELA HOLLAND )
    Plaintiff, )
)
v. ) Civil Action No. TMD 09-1149TMD
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
    Defendant. )

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Pamela Holland ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383(c). Before the Court are Plaintiff's Motion for Summary Judgment (or Remand) (Pl.'s Mot. Summ., ECF No. 14), Defendant's Motion for Summary Judgment (Def.'s Mot. Summ., ECF No. 18) and Plaintiff's Response to Defendant's Motion for Summary Judgment (Pl.'s Resp., ECF No. 19). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is Granted.

I. Procedural History

Plaintiff filed her application for SSI on October 12, 2005 alleging disability since May 15, 2005 due to lupus, arthritis, bad back, acid reflux disease, numbness in hands and feet. R. at

133, 135, 161. In a prehearing memorandum, she alleged disability to severe lupus, arthritic problems, extreme joint pain (constant pain in hips and in arms), throbbing of the hands, numbness in the back and legs when standing, acid reflux and depression. R. at 232. The claim was denied initially and on reconsideration. R. at 93-95, 99-100. On January 10, 2008, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 29-85. Plaintiff was represented by counsel. In a decision dated February 20, 2008, the ALJ denied Plaintiff's request for benefits. R. at 12-28. On April 7, 2009, the Appeals Council denied review making this action ripe for review. R. at 1-3.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: discoid lupus erythematosus ("DLE"), gastroesophegal reflux disease, osteoarthritis, obesity and depression. At step three, the ALJ found that her impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff had no past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 12-28.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the

2

Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

## IV. Discussion

Plaintiff contends that (1) the ALJ erred by not giving any weight to the assessments of Plaintiff's primary care provider; (2) the ALJ erred by failing to properly evaluate Plaintiff's systematic lupus erythematosus ("SLE"); (3) the ALJ erred in his evaluation of Plaintiff's obesity; and (4) the ALJ erred in his evaluation of the nature and scope of Plaintiff's treatment. For the reasons discussed below, the Court finds Plaintiff's arguments to be without merit.

### A. Opinion of Plaintiff's Primary Care Provider

Plaintiff argues that the ALJ erred by discrediting the opinion of Plaintiff's treatment provider, Jaqueline G. Snelson, a certified registered nurse practitioner. Plaintiff asserts that the

ALJ discounted her opinion because she was not an "acceptable medical source" under Social Security Ruling ("SSR") 06-03p. Plaintiff does not dispute that Ms. Snelson was indeed not an "acceptable medical source" under 20 C.F.R. § 416.913, but argues that the ALJ should have evaluated her opinion as an "other source" under SSR 06-03p including her findings with respect to impairment severity and functional effects.

In his opinion, the ALJ specifically addressed Ms. Snelson's opinion. R. at 22-24. He clearly provided reasons for rejecting her opinion which, if accepted, would have precluded Claimant from all full time work. Significantly, he found that Ms. Snelson's assessment was not supported by diagnostic testing or the overall medical evidence in the record and appeared to be based largely on Claimant's subjective complaints. R. at 23. The ALJ noted that Ms. Snelson reported that Claimant used only over the counter medications, had "pretty good" strength in her hands and an excellent range of motion. R. at 22, 289. Claimant reported being mostly pain free when on her medication. R. at 24, 355. On March 3, 2007, Claimant complained to Ms. Snelson of discomfort when moving her joints but she was noted to have full range of motion and was sitting cross legged. R. at 24, 366. Similarly, consultative examiner, Dr. Afaq Ahmad, reported that Claimant had full range of motion on all joints except the right shoulder. R. at 23, 300. At her consultative examination, Claimant was able to walk without any assistive devices and there was no deformity, joint swelling, erythmea or effusion. R. at 24, 300. With respect to the fact that the ALJ also found significant that Ms. Snelson's assessment seemed largely based on Plaintiff's complaints, the ALJ conducted a thorough review of Claimant's subjective complaints of pain, finding her not to be entirely credible. The Court

4

finds that the ALJ's credibility finding is fully supported by substantial evidence in the record. Additionally, Plaintiff does not point to any objective medical evidence in the record which would support the restrictions found by Ms. Snelson.

In addition, the Court finds that Plaintiff misinterprets the ALJ's discussion of Ms. Snelson and the fact that she is not an accepted medical source. The ALJ noted that Ms. Snelson utilized a questionnaire designed for individuals with systemic lupus erythematosus, R. at 304-07, and that Ms. Nelson, as a nurse practitioner, could not make that diagnosis for the purposes of establishing a medically determinable impairment. As discussed in detail below, the only diagnosis supported by the record was DLE. The ALJ did not discount Ms. Snelson's opinion because she was not an acceptable medical source. Rather, he evaluated it in accordance with SSR 06-03p and gave specific reasons supported by the record for rejecting it.

    B. <u>Systematic Lupus Erythematosus</u>

Plaintiff next argues that the ALJ should have found that Plaintiff suffered from SLE as opposed to his finding that she only suffered from DLE. Plaintiff goes on to argue that she meets Listing 14.02 for this disease and effectively presents a diagnosis of SLE despite the absence of any valid diagnosis of such in the record.

The ALJ found Claimant to suffer from DLE and in support of this finding relied on a pathology report dated June 26, 2001, which was suggestive of DLE not SLE. R. at 18, 241. While Plaintiff correctly points out that the report is dated approximately four years prior to the filing of the underlying application, that does not negate its validity. Indeed, Plaintiff does not dispute the validity of this medical finding but argues that Claimant's DLE developed into SLE.

5

"DLE progresses to SLE in about 5 percent of cases."[1] DLE is a form of lupus where the individual has skin lesions but generally no systemic symptom. SLE, by contrast, affects both the skin and internal organs and is a chronic, inflammatory, multisystem disorder of the immune system. In SLE, the body develops antibodies that react against a person's own normal tissue. Those antibodies are markers for SLE, and are one indicator of many immune system abnormalities that lead to clinical manifestations.[2] *See, e.g.*, R. at 298 (consultative examination noting lupus affects primarily Claimant's skin and physician report indicates no organ damage to her kidney and joints). Plaintiff relies on the Thirteenth Edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation arguing that Claimant meets at least four of the diagnostic criteria reflecting the major clinical features of SLE. A person shall be said to have SLE if she exhibits four or more of the following eleven criteria, serially or simultaneously:

> 1. Malar rash: Fixed erythema, flat or raised, over the malar eminences, tending to spare the nasolabial folds; 2. Discoid rash: Erythematous raised patches with adherent keratotic scaling and follicular plugging; atrophic scarring may occur in older lesions; 3. Photosensitivity: Skin rash as a result of unusual reaction to sunlight, by patient history or physician observation; 4. Oral ulcers: Oral or nasopharyngeal ulceration, usually painless, observed by physician; 5. Arthritis: Nonerosive arthritis involving 2 or more peripheral joints, characterized by tenderness, swelling, or effusion; 6. Serositis: a)

---

[1] *See N*at'l Insts. of Health, Nat'l Inst. of Arthritis and Muscoloskeletal and Skin Diseases, Handout on Health: Systemic Lupus Erythematosus, *available at http://www.niams.nih.gov/Health_Info/Lupus/Lupus_Guide/chapter_4.asp#chp4_der*.

[2] *See id. at http://www.niams.nih.gov/Health_Info/Lupus/Lupus_Guide/chapter_1.asp#chp1_dd*

> Pleuritis-convincing history of pleuritic pain or rubbing heard by a physician or evidence of pleural effusion, *OR* b) Pericarditis-documented by ECG or rub or evidence of pericardial effusion; 7. Renal disorder: a) Persistent proteinuria greater than 0.5 grams per day or greater than 3+ if quantitation not performed *OR* b) Cellular casts-may be red cell, hemoglobin, granular, tubular, or mixed; 8. Neurologic disorder: a) Seizures-in the absence of offending drugs or known metabolic derangements; e.g., uremia, ketoacidosis, or electrolyte imbalance *OR* b) Psychosis-in the absence of offending drugs or known metabolic derangements, e.g., uremia, ketoacidosis, or electrolyte imbalance; 9. Hematologic disorder: a) Hemolytic anemia-with reticulocytosis *OR* b) Leukopenia ... *OR* c) Lyphopenia ... *OR* d) Thrombocytopenia ...; 10. Immunologic disorder: a) Positive LE cell preparation *OR* b) Anti-DNA: antibody to native DNA in abnormal titer *OR* c) Anti-Sm: presence of antibody to Sm nuclear antigen *OR* d) False positive serologic test for syphilis known to be positive for at least 6 months and confirmed by *Treponema pallidum* immobilization or fluorescent treponemal antibody absorption test; 11. Antinuclear antibody: An abnormal titer of antinuclear antibody by immunofluorescence or an equivalent assay at any point in time and in the absence of drugs known to be associated with "drug-induced lupus" syndrome.[3]

The record contains no analysis by any medical source of these 11 symptoms. Plaintiff's treatment record never states a properly supported diagnosis of SLE and includes not a single notation that her discoid lupus has become systemic. A screening test for ANA is standard in assessing SLE because it is positive on close to 100% of patients with active SLE. *See http://www.niams.nih.gov/Health_Info/Lupus/Lupus_Guide/chapter_3.asp.* The ALJ specifically noted that Claimant's ANA tests were negative. R. at 24, 247 (test reports dated July 16, 2001), R. at 368 (test reports dated November 17, 2007). On July 16, 2001, Dr. McCagh noted "PATHOLOGY CONFIRMED – DISCOID LUPUS ERYTHEMATOSUS." R. at 242. As the ALJ notes, the record is largely devoid of any complaints of lupus between the June 26, 2001 biopsy and mid-2005 when she complained to her nurse practitioner that lupus

---

[3] American Coll. of Rheumatology, "The 1982 Revised Criteria for Classification of Systemic Lupus Erythematosus," *available at* http://www.rheumatology.org/practice/clinical/classification/SLE/sle.asp

was breaking out on her face, neck and arms. R. at 22, 290. Yet, the ALJ also noted that Claimant failed to even show for her follow-up appointment. *Id.* Additionally, as discussed above, Ms. Snelson's use of the SLE questionnaire is given no weight because that diagnosis simply was not in the record. R. at 23, 304-07. Moreover, while Claimant testified that Ms. Snelson diagnosed her with the non-skin form of lupus (i.e. SLE), R. at 52, the record demonstrates that Ms. Snelson relied only on Dr. McCagh's diagnosis which as clearly indicated above was DLE. R. at 304. Accordingly, the record does not contain a diagnosis of SLE and the ALJ was not required to provide a detailed analysis of Listing 14.02.

    C. Obesity

Plaintiff next argues that while the ALJ considered Claimant's obesity at step three of the sequential evaluation, he failed to consider it at steps four and five. At the outset, the Court notes that at step four, the ALJ found that Claimant did not have any past relevant work so the ALJ need not make any further consideration of Claimant's obesity at that step 4. At step 5, Plaintiff correctly notes that SSR 02-01p requires the ALJ to consider obesity in determining an individual's RFC. Plaintiff again directs the Court's attention to the functional limitations found by Ms. Snelson which, as discussed above, the Court found the ALJ did not err in affording no weight.

In fact, the ALJ noted that although Claimant exhibited a limp at a consultative examination on November 21, 2006, see R. at 18, 340, she did not require the use of an assistive device to stand or walk at this consultative examination or at the one conducted on January 28,

2006.  R. at 18, 300.[4]  Indeed, Claimant testified that she did not use a cane or a wheelchair and that she could walk for half a block, stand for 12 to 15 minutes, and sit for 15 to 20 minutes .  R. at 22, 62-63.  Nevertheless, the ALJ limited Claimant to light work and also provided a sit/stand option as well as limitations as far as stooping, crouching, climbing, kneeling, crawling and balancing.  R. at 20.  Substantial evidence supports the ALJ's findings regarding Plaintiff's obesity.

### D.  Plaintiff's Treatment

Lastly, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's treatment including her relationship with Ms. Snelson and her inability to pay for medical treatment.  The Court has reviewed the ALJ's opinion in this regard and finds that his opinion does not evidence a predisposed mindset towards a finding of non-disability as Plaintiff claims.  His findings were not based solely on Claimant's failure to seek out medical treatment, but rather on the objective medical evidence in the record (or lack thereof) discussed above.  The ALJ's discussion of Ms. Snelson's  remarks that she was hopeful Claimant would receive disability benefits reveal nothing more than his reasoning that her claims may be scrutinized.  R. at 23-24, 312.  *Cf. Cornett v. Astrue*, 261 Fed.Appx. 644, 650 (5th Cir. 1999).  ("Further, there is no basis in the record for Cornett's claim that the ALJ exhibited a "bias" against him. The ALJ's remarks do not indicate that he was predisposed to rule against Cornett . . . Instead, they disclose a

---

[4] In fact, the ALJ erred in  noting the second consultative report did not specifically indicate Claimant did not require the use of an assistive device to stand or walk.  R. at 340-42.  However, while the report did indicate it was difficult for Claimant to walk, it did not note the use of any assistive devices.  Any error by the ALJ is harmless and the evidence discussed above supports his findings regarding Plaintiff's obesity.

9

reasoned judgment that Cornett's claims should be received with some skepticism."). As discussed above, the ALJ rejected her opinion that Claimant could not work based on the lack of objective evidence to support such an opinion.

With respect to Plaintiff's assertion that the ALJ found Plaintiff disabled because she could not afford medical treatment, the Court also finds this argument without merit. The ALJ considered Claimant's failure to follow-up at appointments and receive appropriate treatment in connection with her allegations of disabling pain. R. at 25. He did not find her entirely credible based on this and also evidence in the record which demonstrated that she lied about the reasons for requesting pain medication, R. at 24, 26, 309, and that her claims of limited daily activities were outweighed by the weak evidence in the record.

V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.


Date:   November  9, 2010                         _____/s/_____
                                                  THOMAS M. DIGIROLAMO
                                                  United States Magistrate Judge


Copies to:
Anthony R. Mignini
Mignini & Raab, LLP
2015 Emmorton Rd., Suite 202
Bel Air, MD 21015

Allen F. Loucks

Assistant United States Attorney
6625 United States Courthouse
101 West Lombard Street
Baltimore, Maryland 21201-2692